## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTER DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>STANLEY THAW<br><br>DEBTOR<br>_____<br><br><br>CHRISTOPHER J. MOSER, TRUSTEE<br>  PLAINTIFF<br><br>V<br><br>KERNELL THAW AND STANLEY THAW<br><br> DEFENDANTS | CASE NO 11-43603<br>CHAPTER 7<br><br><br><br>ADVERSARY NO. 12-_____ |

### COMPLAINT FOR TURNOVER PROPERTY OF THE
### ESTATE AND OBJECTION TO HOMESTEAD EXEMPTION

COMES NOW, Christopher J. Moser, Trustee, and files this his Complaint for Turnover Property of the Estate and Objection to Homestead Exemption and would show the court as follows.

### *Parties; Jurisdiction and Venue*

1.   The Plaintiff is Christopher J. Moser, acting Chapter 7 Trustee for the Debtor's bankruptcy estate.

2.   Defendant Kernell Thaw is an individual residing in Collin County, Texas who may be served with summons at 5197 Brandywine Lane, Frisco, Texas 75034-2243.

3.      Defendant Stanley Thaw is the Debtor herein is residing in Collin County, Texas and may be served with summons at 5197 Brandywine Lane, Frisco, Texas 75034-2243.

4.      This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§1334 and 157.  This matter constitutes a "core" proceeding within the meaning of 28 U.S.C. §157(b)(2)(A),(E) and (O).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409 because the Chapter 7 bankruptcy proceedings of the Debtor are pending in this district and the causes asserted herein arise under Title 11 or arise in or are related to a case under Title 11.

### *Summary of Relief Requested*

6.      This is an action seeking to obtain recovery and turnover, as property of the estate, of all interests held in the name of Kernell Thaw and/or Stanley Thaw and/or held in the name of any agent acting for either or both of them in the following Texas limited liability companies: (i) HBO2 Works, LLC ("HBO2 Works"), (ii) HBO2Works, Houston, LLC ("HBO2 Houston"), (iii) HBO2Works San Antonio, LLC ("HBO2 San Antonio"), and (iv) HBO2 America, LLC ("HBO2 America)  (collectively the "HBO2 Companies").  The HBO2 Companies are presently or have previously been engaged in the business of maintaining clinics which provide hyperbaric oxygen therapy.

7.      This action also seeks to object to the homestead exemption available to either or both defendants in their current residence located at 5197 Brandywine Lane, Frisco, Texas 75034-2243 and more particularly described as Lot 12, Block C of Starwood Phase Four Village No. 15, an Addition to the City of Frisco, Collin County, Texas, according to the Map or Plat thereof recorded

in Volume N, Page 11, of the Map Records of Collin County, Texas (hereinafter referred to as "Brandywine").

## *The Facts Concerning the HBO2 Companies*

8.      Kernell and Stanley Thaw were married in 2001 or before.

9.      **HBO2 Works** was caused to be formed by Kernell and Stanley Thaw on or about June 9, 2004. Initially its members and managers were MY BAP-1 Management, LLC ("MY BAP") and Michael Kincaid. MY BAP was also a Texas limited liability company whose member-managers were Kernell and Stanley Thaw. It was formed by them on August 21, 2003. Its charter was terminated by tax forfeiture on July 15, 2005. On January 3, 2008, HBO2 Works filed Articles of Amendment with the Texas Secretary of State which named Stanley Thaw as the sole manager. No subsequent amendments or changes in management are on file with the Secretary of State, except to change the registered agent. The Debtor also signed the Texas Franchise Tax Public Information Report for 2009 as its President. He also signed the Texas Franchise Public Information Report for 2010 on behalf of HBO2 Works and did that in the capacity of its MEMBER.

10.      **HBO2 Houston** was formed on January 4, 2008. The 2010 franchise tax report filed by this Company for 2010 reflects that Stanley Thaw is the sole managing member. The Debtor has represented under oath that this Company was not funded with capital contributions from its owner, but rather by borrowing. The federal income tax returns for this Company confirm the truth of those statements by the Debtor. The Debtor also signed the Texas Franchise Tax Public Information Report for 2009 and 2010 on behalf of HBO2 Houston, in the capacity of its MEMBER. Moreover, that report represents that the Debtor is the only Managing Member.

11.    **HBO2 America** was formed on January 26, 2009.  Kernell Thaw was the initial managing member of this Company.  However, the Debtor has represented under oath that this Company was not funded with capital contributions from its owner, but rather by borrowing.  The federal income tax returns for this Company confirm the truth of those statements by the Debtor.  The Debtor also signed the Texas Franchise Tax Public Information Report for 2010 on behalf of HBO2 America, and did so in the capacity of its MANAGER.

12.    **HBO2 San Antonio** was formed on March 26, 2009.  Kernell and Stanley Thaw were the initial members of this Company.  The Certificate of Formation designated the Debtor as a "governing person."  The Debtor has represented under oath that this Company was not funded with capital contributions from its owner, but rather by borrowing.  The federal income tax returns for this Company confirm the truth of those statements by the Debtor.  The Debtor also signed the Texas Franchise Tax Public Information Report for 2010 on behalf of HBO2 San Antonio, and did so in the capacity of its MEMBER.

13.    As established by the above and foregoing, the interests of Kernell and Stanley Thaw in the HBO2 Companies are their joint managed community property and, therefore, are "property of the estate" under 11 U.S.C. §541(a)(2).

14.    The HBO2 Companies are of value to the bankruptcy estate.

15.    Pursuant to § 542(a) of the Bankruptcy Code, the Trustee is entitled to turnover of the HBO2 Companies under  11 U.S.C. §542.

### *The Facts Concerning the Homestead Exemption*

16.    On November 1, 2009, Kernell and Stanley Thaw entered into a Contract for Deed (herein so-called) to purchase Brandywine from Axxium Custom Homes Dallas, LLC ("Axxium").

Kernell and Stanley Thaw moved into Brandywine on or about the same date and it has been their sole residence since that time.  They have claimed it to be their homestead, both before and after the Debtor's bankruptcy.

     17.     The Contract for Deed provided for a purchase price of $2,150,000.

     18.     Between November 1, 2009 and June 27, 2011, Kernell and Stanley Thaw made payments to Axxium under the Contract for Deed in the amount of at least $1,089,888.02.  Kernell and Stanley Thaw were given credit at the closing of their purchase of Brandywine for payments in the aggregate amount of $1,133,195.70.  No explanation of the +/- $43,300 has yet been obtained.

     19.     The $1,089,888.02 of payments to Axxium were made from the following:

| | |
|---|---:|
| Kernell and Stanley Thaw | $ 191,400.00 |
| HBO2 America | $ 103,356.00 |
| HBO2 Works | $ 40,000.00 |
| HBO2 Houston | $ 456,648.32 |
| HBO2 San Antonio | $ 295,483.70 |
| TOTAL | $1,089,888.02 |

     20.     On or about June 27, 2011, Kernell and Stanley Thaw closed a mortgage loan from Regions Bank for $1,000,000 and completed their purchase of Bandywine from Axxium.  The loan from Regions Bank was evidenced by a promissory note and was secured by a first lien deed of trust which was filed of record on June 28, 2011.  An additional amount of +/- $22,941.94 was paid by or on behalf of Kernell and Stanley Thaw at the closing.

     21.     Prior to moving to Brandywine in November, 2009, Kernell and Stanley Thaw resided in their home at 2532 Pelican Bay Drive, Plano, Texas 75093.  It was their homestead until their move to Brandywine.  They have not sold or disposed of the Pelican Bay Drive property and continue to own it through this time.

22.     Regions Bank obtained an appraisal from Mr. Chad Collins.  His opinion of the value of Brandywine as of May 27, 2011 was $1,790,000.00.  Based on that appraisal, the equity of Kernell and Stanley Thaw in Brandywine at that time was $790,000.00.

### *Facts Regarding The Debtors Intent to Hinder, Defraud and Delay Creditors*

23.     In June 2002, Leslie Schachar, M.D. ("Schachar") and the Debtor formed Theramedics, Inc. ("Theramedics").  It was a medical service company formed for the purpose of providing contracted rehabilitation Medicare and Medicaid services to health care organizations and hospitals. Schachar and the Debtor were the initial board of directors and co-owned the business as shareholders.  They also served as Secretary-Treasurer and President, respectively.

24.     Theramedics entered into a series of loan transactions and equipment leases for which various lenders and lessors required personal guaranties which were given by Schachar and the Debtor.  Two instruments signed by Schachar and the Debtor in their individual capacities as guarantors were (a) a note and security agreement with Guaranty National Bank dated December 24, 2002, in the principal amount of $360,000, for the purchase of therapeutic heart equipment ("Note") and (b) a lease agreement dated March 3, 2003 between Theramedics and Banc One Leasing Corporation, for a hyperbaric oxygen therapy system ("Equipment Lease").

25.     In 2004, Theramedics defaulted on the Equipment Lease and JP Morgan Chase Bank filed suit in Denton County against the Debtor, Schachar and Theramedics.

26.     In June 2006, Theramedics defaulted on the Note.  It then ceased business activities and was dissolved.

27.     Schachar personally paid off the balances due on the Note and the Equipment Lease. Guaranty National Bank assigned its Note and Thaw's guaranty to Schachar. JP Morgan Chase Bank,

N.A., the successor in interest to Banc One Leasing, did the same with respect to the Equipment

Lease. Schachar subsequently presented the notes and guaranties to the Debtor and demanded

payment. The Debtor refused to pay.

28.     In June 2007 Wellness Care Center of Denton, Ltd. also filed suit against the Debtor,

Schachar and Theramedics.

29.     In March 2008 the Debtor was sued by HCP CRS1 2817 Denton, Tx. LP.

30.     By May 2008 the Debtor continued his failure and refusal to pay Schachar his portion

of the guaranteed indebtedness and Schachar filed suit against the Debtor.  Suit was based on the

Debtor's individual guaranty of the Note and Equipment Lease. By his suit, Schachar sought recovery

of Thaw's pro rata share of the debt settlement on the two instruments. Schachar also asserted claims

for equitable subrogation, promissory estoppel and declaratory relief.

31.     In March 2009, Schachar filed a second motion for partial summary judgment on his

claims related to Thaw's guaranties.

32.     In August 2009, the trial court ruled in Schachar's favor and awarded Schachar money

damages and attorney's fees.

33.     In October 2009, Schachar filed a motion for summary judgment on Thaw's

counterclaims.

34.     In November 2009, the trial court granted summary judgment in Schachar's favor on

Thaw's counterclaim and ordered that the Debtor take nothing. The same day the trial court issued

its final judgment awarding money damages, attorney's fees and costs to Schachar. An appeal

followed.

---

**COMPLAINT FOR TURNOVER PROPERTY OF THE**
**ESTATE AND OBJECTION TO HOMESTEAD EXEMPTION - Page 7**

35.      ***November, 2009, Chronologically Speaking - This Is the Point in Time When the Non-exempt Assets Began to Be Applied to the Reduction in the Debtor's Purchase Money Obligations for His New $2,150,000 Homestead on Brandywine.  See ¶ ¶ 6 and 7, supra.***

36.      On January 5, 2010, Schachar garnished the Debtor's accounts at Chase Bank.

37.      On July 26, 2011, the Amarillo Court of Civil Appeals issued its opinion affirming the judgment of the trial court in favor of Schachar.

38.      On November 4, 2011, the Texas Supreme Court denied the Debtor's Petition for Review and the case became final and non-appealable.

39.      On November 30, 2011, Schachar garnished the Debtor's accounts at Regions Bank and at Fidelity Investors.

40.      On December 2, 2011, the Debtor filed his petition in bankruptcy.

───────────────────────────

*Badge of Fraud Analysis*

| Badge of Fraud | Applicable Facts in this Case |
|---|---|
| 1. The transfer or obligation was to an insider | The transfer was for the benefit of the Debtor and Spouse and they were the indirect transferees |
| 2. The debtor retained possession or control of the property transferred after the transfer | Debtor and spouse continue to reside in the $2,150,000 residence they contend to be their homestead. |
| 3. The transfer or obligation was concealed | The very nature of the transaction made it difficult for creditors or others to discover or detect. It was almost totally comprised of payments from 3rd party entities to a third party home builder. A mere examination of the Debtor and spouse's records would not reveal but a very few of the payments |
| 4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit | Yes. He had been sued at least 4 times. |
| 5. The transfer was of substantially all the debtor's assets | Unknown, but the $1,089,888 of payments was substantial. |
| 6. The debtor absconded | Not applicable. |
| 7. The debtor removed or concealed assets | Other than the payments themselves, no known concealment existed in 2009 when the payments/transfers in question began. |
| 8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred | Not applicable, these payments were indirectly from the Debtor for the benefit of the Debtor and spouse. |
| 9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred | Debtor's aggregate financial condition at the time is presently unknown. |
| 10. The transfer occurred shortly before or shortly after a substantial debt was incurred | Not applicable. |
| 11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor | Not applicable. |

### *Applicable State Law*

41. The following Texas law is particularly relevant to the Trustee's causes of action set forth herein:

> **All property possessed during or up dissolution of marriage is presumed community property. Tex.Fam.Code §3.003(a).**
>
> **All community property is presumed to be joint management community property. *Caulley v Caulley*, 777 S.W.2d 147 (Tex.App.--Houston [14th] 1989), rev'd in part on other grounds, 806 S.W.2d 795 (Tex.1991); *Shiffers v Estate of Ward*, 762 S.W.2d 753 (Tex.App.--Ft. Worth 1988, writ denied); *Hanif v Clarksville*, No.06-0900110-CV (Tex.App.--Texarkana 2010, no pet.).**
>
> **The party asserting the separate status of property has the burden to rebut the community presumption by clear and convincing evidence. *Chavez v Chavez*, 269 SW3d 763 (Tex.App.--Dallas 2008, no pet.).**
>
> **The presumption of sole management arising from property being in name of only one spouse, is protection only for transferee third parties from claims of the non-title holding spouse. Only a third party transferee may rely upon that presumption. As its title "Protection of Third Persons" reflects, Section 3.104 is for the benefit of third party transferees and the presumption by "sole title" is not effective as against the other spouse. *Wright v. Wright*, 280 S.W.2d 901, 910 (Tex. App.--Eastland 2009, no pet.).**

### *Application for Section 542 Turnover of Property of the Estate*

42. As established by the above and foregoing, the interests of Kernell and Stanley Thaw in the HBO2 Companies are their joint managed community property and, therefore, are "property of the estate" under 11 U.S.C. §541(a)(2).

43. The HBO2 Companies are of value to the bankruptcy estate.

44. Pursuant to 11 U.S.C. §542(a) of the Bankruptcy Code, the Trustee is entitled to turnover of the HBO2 Companies.

### *Application for Authority to Operate Business of HBO2 Companies Under 11 U.S.C. §721*

45. The Trustee requests that the Court order that he be authorized to operate the business of the HBO2 Companies for a period of up to six (6) months, and thereafter as may be ordered by this Court, in furtherance of the orderly liquidation of the Debtor's bankruptcy estate.

### *Objection to Homestead Exemption for Brandywine Pursuant to 11 U.S.C. §522(o)*

46. Trustee objects to the claimed exemption of Brandywine as the homestead of Kernell and Stanley Thaw pursuant to 11 U.S.C. §522(o).

47. Within the 10-year period ending on the date of the filing of the Debtor's bankruptcy petition, Kernell and Stanley Thaw utilized non-exempt property of at least $1,089,888.02 to reduce their indebtedness owed with respect to Brandywine and increase their equity in such property in contradiction of §522(o). Such application of non-exempt property was done with the intent to hinder, delay and/or defraud creditors.

### *Objection to Homestead Exemption Pursuant to 11 U.S.C. §522(p)*

48. The Debtor and his wife purchased Brandywine less than 1,215 days prior to the date the Debtor filed bankruptcy. None of the funds used to acquire Brandywine were proceeds of a prior homestead sale which were rolled over into Brandywine. Therefore, the Debtor's homestead exemption is capped at $146,450 pursuant to 11 U.S.C. §522(p).

49. It is undisputed that the Debtor purchased Brandywine within the 1,215 days prior to filing bankruptcy. Likewise, it is undisputed that the Debtor did not use the proceeds from a prior Texas homestead to acquire Brandywine. Thus, the clear language of §522(p) of the Bankruptcy Code limits the Debtor's homestead exemption in Brandywine to an equity exemption of $146,450.

50. The Debtor's wife has no separate homestead property right to Brandywine that is exempt. See *H.D. Smith Wholesale Drug Co. v. McCombs (In re McCombs)* 2007 WL 4411909 (Bkrtcy.S.D.Tex.); see also, *In re Kim*, 405 B.R. 179 (Bankr. N.D. Tex. 2009). Only the Debtor may exempt property that has become property of the estate, which "effectively eliminates the rights of a non-debtor spouse to manage and control community property." *In re Rodriguez*, 353 B.R. 144, 149 (Bankr. N.D. Tex. 2006). Thus, the Debtor's wife has no separate and distinct exempt homestead interest in Brandywine that would entitle her to compensation or to prevent the sale of property. *In re Kim* at 182.

51. Trustee seeks an order of this Court finding that Brandywine is property of the estate subject to the Debtor's equity exemption of $146,450 and that Brandywine may be sold by the Trustee provided that the Debtor is paid his equity exemption of $146,450.00 from the sale proceeds.

## *Prayer*

WHEREFORE, PREMISES CONSIDERED, the Trustee prays that the Court grant Trustee's request for relief and (i) order that Kernell and Stanley Thaw forthwith turnover to the Trustee all of their interest, rights, powers and authorities over the HBO2 Companies, (ii) grant the Trustee's request to manage the Estate's interest in the HBO2 Companies in the manner prescribed and permitted by 11 U.S.C §721, and (iii) grant the Trustee's objection to the homestead exemption claimed by Kernell and Stanley Thaw in Brandywine and grant him an equitable lien therein as requested supra, with the conditional authority to foreclose the same if not timely paid, and (iv) such other and further relief to which the Trustee may show himself entitled.

Respectfully submitted,

**THE BUFKIN LAW FIRM**

 */s/ Richard L. Bufkin*
Richard L. Bufkin
State Bar No. 03316950
3811 Turtle Creek Boulevard, Suite 800
Dallas TX 75219-4550
Telephone:     (972) 808-9791
Facsimile: (972) 808-9795
Email:     *Dick@Bufkinlaw.com*

***Special Counsel to Christopher J. Moser***